UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BANCO DE SEGUROS DEL ESTADO,

    *Plaintiff,*

    *v.*

INTERNATIONAL FINANCE
CORPORATION,

    *Defendant.*

Case No.: 06 CV 2427(RCC)

## DEFENDANT INTERNATIONAL FINANCE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF <u>ITS MOTION TO DISMISS THE COMPLAINT</u>

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6975)
701 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
(202) 626-3600

*Attorneys for International Finance
Corporation*

May 1, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND .......................................................................................................... 3

ARGUMENT ............................................................................................................... 3

I.    THE COMPLAINTS SHOULD BE DISMISSED BECAUSE THE COURT LACKS
      SUBJECT MATTER JURISDICTION OVER THESE ACTIONS .................................. 3

II.   THE COMPLAINTS SHOULD BE DISMISSED BECAUSE THIS COURT LACKS
      PERSONAL JURISDICTION OVER IFC .......................................................... 3

III.  THE COMPLAINTS SHOULD BE DISMISSED BECAUSE VENUE IS NOT PROPER
      IN THIS DISTRICT ................................................................................. 3

IV.   THE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO STATE A
      CLAIM UPON WHICH RELIEF CAN BE GRANTED ...................................... 4

      A.    Applicable Standard ....................................................................... 4

      B.    Plaintiffs Fail To State A Claim Under Uruguayan Law ...................... 4

            1.    As A Minority Shareholder, IFC Cannot Be Held Liable For The Acts Of
                  Banco Montevideo, Its Administrators, Or Its Officers .......................... 5

            2.    IFC Has Not Committed Any Act Or Omission That Would Subject It To
                  Liability Under Uruguayan Tort Law ....................................... 7

            3.    IFC Is Not A Member Of The Velox Economic Group And Cannot Be
                  Held Liable Under Any Of The Theories Applicable To Such Groups ...... 9

V.    THE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO JOIN
      NECESSARY AND INDISPENSABLE PARTIES ........................................ 11

      A.    Numerous Necessary Parties Are Currently Absent From These Actions ........... 12

      B.    This Court Lacks The Personal Jurisdiction Needed To Join The Absent Parties
            To These Actions ........................................................................ 14

      C.    The Absent Parties Are Indispensable To The Present Actions ............... 15

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

<u>Federal Cases</u>                                                                                      <u>Page(s)</u>

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) .................................4

*Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121 (2d Cir. 1990) ............... 11-12

*Cinemotion NV v. Lorimar-Telepictures Corp.*, No. 86 CIV. 8673 (RPP),
    1989 WL 120083 (S.D.N.Y. Oct. 5, 1989) .........................................................14

*Circle Indus. v. City Fed. Sav. Bank*, 749 F. Supp. 447 (E.D.N.Y. 1990) ..............................13, 17

*Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899 (S.D.N.Y. 1990) ....................................4

*Ente Nazionale Idrocarburi v. Prudential Sec. Group*, 744 F. Supp. 450
    (S.D.N.Y. 1990) .................................................................... 13, 17-18

*Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184 (2d Cir. 1998) .............................4

*Heine v. Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt*,
    856 F. Supp. 190 (S.D.N.Y. 1994) ..................................................................4

*Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir. 1998) ......................................................14

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ................................4, 7

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) ....................................................................4

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) ...................... *passim*

*Rapoport v. Banco Mexicano Somex, S.A.*, 706 F. Supp. 207 (S.D.N.Y. 1988) ..................... 15-16

*Rapoport v. Banco Mexicano Somex, S.A.*, 668 F. 2d 667 (2d Cir. 1982) ....................................14

*Spirit v. Teachers Ins. & Annuity Ass'n of Am.*, 416 F. Supp. 1019 (S.D.N.Y. 1976) .................13

*S & S Mach. Corp. v. Gen. Motors Corp.*, No. 93 Civ. 3237 (CSH),
    1994 WL 529867 (S.D.N.Y. Sept. 28, 1994) ...................................................12

*Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721 (2d Cir. 2000) ........................................11

<u>Federal Statutes</u>                                                                                                      <u>Page(s)</u>

22 U.S.C. § 282 (2005) ..................................................................................................1

22 U.S.C. § 288, International Organizations Immunities Act of 1945 ("IOIA") (2005) ..............1

Fed. R. Civ. P. 9(b) ......................................................................................................2

Fed. R. Civ. P. 12(b)(1) ............................................................................................1, 3

Fed. R. Civ. P. 12(b)(2) ............................................................................................1, 3

Fed. R. Civ. P. 12(b)(3) ............................................................................................1, 3

Fed. R. Civ. P. 12(b)(6) ......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(7) ............................................................................................1, 3

Fed. R. Civ. P. 19(a) ............................................................................................ 12-14

Fed. R. Civ. P. 19(b) ............................................................................................ 15-17


<u>Other Authorities</u>

Articles of Agreement of the International Finance Corporation, May 25, 1955,
    *amended* Apr. 28, 1993, 7 U.S.T. 2197 ......................................................................1, 13

2A James Wm. Moore, et al., Moore's Federal Practice ¶ 12.07 (2d ed. 1986) ...........................4

## INTRODUCTION

Pursuant to Rules 12(b)(1)–(b)(3) and 12(b)(6)–(b)(7) of the Federal Rules of Civil Procedure, International Finance Corporation ("IFC") respectfully moves to dismiss Plaintiff's Complaint on the following grounds.

First, none of Plaintiff's claims are of the type for which IFC has waived immunity under the International Organizations Immunities Act of 1945 ("IOIA") and IFC's Articles of Agreement. Plaintiff does not have a debtor, creditor, or bondholder relationship with IFC. Moreover, Plaintiff—who allegedly is a depositor and/or creditor of a Uruguayan bank in which IFC held a minority share or of other financial entities related to that bank—is not the type of entity to whom IFC would have subjected itself to suit in order to achieve its chartered objectives, which is required for any waiver to be valid. Indeed, any such waiver of its immunity to this type of plaintiff would hamper IFC's functioning and hinder it from conducting its activities. Absent a waiver of IFC's immunity, the Court lacks subject matter jurisdiction over this action.

Second, pursuant to IFC's enabling statute, 22 U.S.C. § 282f, IFC is "deemed to be an inhabitant of the federal judicial district in which its principal office in the United States is located." Further, under 22 U.S.C. § 282g, IFC is only subject to suit "in the territories of a member [country] in which [IFC] has an office." IFC's only office in the United States is in the District of Columbia, where IFC is headquartered. Therefore, pursuant to sections 282f and 282g, personal jurisdiction over IFC exists in the District of Columbia, not the Southern District of New York.

Third, venue in the Southern District of New York is improper. Pursuant to 22 U.S.C. § 282f and IFC's Articles of Agreement, the proper venue for a suit against IFC is the District of Columbia.

Fourth, the Complaint fails to state a claim against IFC upon which relief can be granted. Plaintiff's claims are based entirely on Uruguayan law. Under the applicable laws of Uruguay,[1] a mere shareholder cannot be jointly and severally liable for the fraudulent acts of a corporation's administrators or directors, regardless of whether the corporation is part of a so-called "economic group." In addition, Plaintiff has failed to state any claim cognizable under Uruguayan tort law. IFC did not owe Plaintiff any legal obligation or duty under Uruguayan law, and did not commit any act serving as a direct and immediate cause of Plaintiff's alleged harm. Moreover, Plaintiff fails to plead with specificity any alleged fraud committed by IFC, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Instead, the Complaint alleges in a conclusory manner that by virtue of being a shareholder of an Uruguayan bank, IFC is liable for the alleged fraud and criminal acts of the bank's administrators and directors.

Fifth, the Complaint should be dismissed because Plaintiff has failed to join indispensable parties under Rule 19. The Complaint describes numerous parties who were active participants in the alleged fraudulent and criminal conduct for which Plaintiff alleges IFC is jointly and severally liable. These absent parties are necessary and indispensable to a just adjudication of this action. Plaintiff's failure to join them warrants dismissal of the Complaint.

Concomitantly with filing this memorandum of law supporting its Motion to Dismiss this action, IFC has filed a motion and supporting memorandum of law to dismiss the related action, *Stiegwardt v. International Finance Corporation*, 06 CV 2426 (RCC) (S.D.N.Y.). The

---

[1] In support of this Memorandum and pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, IFC submits an Affidavit of Laura Ramón dated April 28, 2006, containing an opinion of applicable Uruguayan law. Ms. Ramón's Affidavit is attached as Exhibit A ("IFC Exhibit A") to the Memorandum of Law in Support of IFC's Motion to Dismiss the Complaint in the related *Stiegwardt v. IFC* case, 06-CV-2426, which is submitted concomitantly with this memorandum.

complaints in the two actions are virtually identical. To avoid repeating the same arguments in the two memoranda, this memorandum contains the arguments for dismissal under Rules 12(b)(6) and 12(b)(7), and incorporates by reference the Background section and arguments for dismissal under Rules 12(b)(1)–(b)(3) from the memorandum of law accompanying its motion to dismiss the related *Stiegwardt* action. Citations to Plaintiffs' allegations in both Complaints are made whenever possible.[2]

## BACKGROUND

The Background section from the Memorandum of Law in Support of IFC's Motion to Dismiss the *Stiegwardt* Complaint is incorporated by reference in its entirety.

## ARGUMENT

### I. THE COMPLAINTS SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THESE ACTIONS

The argument on this issue from the Memorandum of Law in Support of IFC's Motion to Dismiss the *Stiegwardt* Complaint is incorporated by reference in its entirety.

### II. THE COMPLAINTS SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IFC

The argument on this issue from the Memorandum of Law in Support of IFC's Motion to Dismiss the *Stiegwardt* Complaint is incorporated by reference in its entirety.

### III. THE COMPLAINTS SHOULD BE DISMISSED BECAUSE VENUE IS NOT PROPER IN THIS DISTRICT

The argument on this issue from the Memorandum of Law in Support of IFC's Motion to Dismiss the *Stiegwardt* Complaint is incorporated by reference in its entirety.

---

[2] The Complaints are referred to as the *Stiegwardt* Complaint and *Seguros* Complaint.

## IV. THE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Applicable Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint. *See, e.g.*, *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 902 (S.D.N.Y. 1990). Dismissal is appropriate if a plaintiff has proffered no set of facts in support of its claim which would entitle it to relief. *See, e.g.*, *Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 187-188 (2d Cir. 1998).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In this regard, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A James Wm. Moore et al., Moore's Federal Practice ¶ 12.07, at 63 (2d ed. 1986)) (footnote omitted). Thus, a plaintiff's "bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *see also In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994) ("[C]onclusory allegations of the legal status of the defendants' acts need not be accepted as true . . . ."); *Heine v. Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt*, 856 F. Supp. 190, 191-92 (S.D.N.Y. 1994) (noting that a court "need not defer to legal conclusions asserted in the Complaint").

### B. Plaintiffs Fail To State A Claim Under Uruguayan Law

Plaintiffs contend that the law of Uruguay governs these actions because the parties involved in and the events giving rise to the Complaints were located and occurred principally in Montevideo, Uruguay. *Seguros* Complaint ¶¶ 55, 65-67; *Stiegwardt* Complaint ¶¶ 56, 66-68. Accordingly, Plaintiffs do not have any claims under U.S. law.

Plaintiffs assert three types of claims under Uruguayan law: (1) IFC should be held liable to Plaintiffs for the acts of Banco Montevideo and its administrators or officers because IFC was a shareholder of that bank; (2) IFC should be held liable to Plaintiffs under Uruguayan tort law for not appointing a director for that bank; and (3) IFC should be held liable to Plaintiffs as a member of the same "economic group" as Banco Montevideo.

To refute these claims, IFC submits an opinion of Uruguayan law assessing Plaintiffs' claims based upon a review of the Complaints filed in this and the related *Stiegwardt* action, Schedule A to the *Stiegwardt* Complaint, and the November 27, 2001 Shareholders Agreement that Plaintiffs relied upon and referenced in its Complaint. Ramón ¶ 12. Ms. Ramón is a partner of the Uruguayan law firm Ferrere Abogados and is well-qualified to opine on Uruguayan law. *Id.* ¶¶ 1-2. In forming her opinion, Ms. Ramón assumes that Plaintiffs' factual submissions are true and does not rely on or consider any statements by IFC contesting those facts. *Id.* ¶ 14. Upon careful review of Plaintiffs' submissions, Ms. Ramón concludes that Plaintiffs have failed to state any claims under Uruguayan law as a matter of law. *Id.* ¶ 92.

1.    **As A Minority Shareholder, IFC Cannot Be Held Liable For The Acts Of Banco Montevideo, Its Administrators, Or Its Officers**

One of the main features of Uruguay's corporation law, No. 16060, is the limited liability of shareholders, who cannot be held personally liable for acts performed or obligations incurred by the corporation. Ramón ¶ 36 (referring to article 244 of law No. 16060). According to Law No. 16060, the corporation and its shareholders are legally independent entities, and as such maintain separate liabilities and assets. *Id.* ¶¶ 36-38. Thus, the corporation is liable only to the extent of its own net worth; shareholder assets cannot be part of a guarantee to corporate creditors. *Id.* ¶¶ 39, 72.

While Law No. 16060 does provide limited exceptions to the general rule that shareholders may not be held liable, those exceptions apply only to certain acts or transactions that the shareholder performs in relation to the corporation, such as obligations to pay the value of subscribed shares or to reimburse the company for dividends collected in bad faith, that have not been alleged and are inapplicable here. *Id.* ¶¶ 40-42. In each of these exceptions, shareholder liability does not derive from the mere condition of holding shares, but from either nonperformance by the shareholder of its obligations vis-à-vis the company or the acts it performs in the exercise of its rights vis-à-vis the company. *Id.* ¶ 40. Further, the only other circumstances under which a shareholder can be held liable are those where the shareholder participates directly in an unlawful act. *Id.* ¶ 34. The Complaints do not allege that IFC participated in any of the unlawful acts committed by the Velox Group.

Likewise, shareholder liability cannot arise from a decision not to participate in the administration or governance of the corporation. *Id.* ¶¶ 43-46. Under Law No. 16060, shareholders may participate in a corporation's administrative or control bodies, but are not required to do so. *Id.* ¶¶ 43, 46. Accordingly, the general principle that shareholders may not be held liable for the acts of a company applies even when a shareholder chooses not to participate in these bodies. *Id.* ¶ 46. Further, no liability that might be attributable to the administrators or officers can be attributed to a shareholder by virtue of such a decision. *Id.* ¶¶ 45-47.

Thus, Plaintiffs' allegations that IFC is liable to them under Uruguayan law because it was a shareholder of Banco Montevideo and it chose not to appoint a director are nothing more than legal conclusions couched as factual allegations. *E.g.*, *Seguros* Complaint ¶¶ 5, 76-77, 80, 86-88, 97-102; *Stiegwardt* Complaint ¶¶ 6, 77-78, 81, 86-88, 98-103. As such, the Court does not have to accept them as true. *In re Am. Express Co. S'holder Litig.*, 39 F.3d at 400-01 n.3;

*Kowal*, 16 F.3d at 1276.  Because these allegations are wrong as a matter of Uruguayan law, they do not constitute a basis on which to state a claim for relief against IFC.  Ramón ¶ 47.

### 2. IFC Has Not Committed Any Act Or Omission That Would Subject It To Liability Under Uruguayan Tort Law

Under Uruguayan tort law, liability requires the existence and proof of several elements: (i) an unlawful act; (ii) fraud or negligence; (iii) damages; and (iv) a causal link.  Ramón ¶ 49 (referring to article 1319 of the Uruguayan Civil Code).  To hold the perpetrator of or participant in a fraud directly liable, all of these requirements must be met.  *Id.*  In this case, at a minimum, the first, second, and fourth elements are not met, even if the allegations in the Complaints are taken to be true.  *Id.*

An unlawful act is one that causes detriment to another's legally protected interest or right.  Ramón ¶¶ 50, 52.  An unlawful act may consist of an affirmative action or an omission. *Id.* ¶ 51.  To be held liable by omission, however, a party must be under a legal or contractual duty to act in a certain way.  *Id.*  As discussed above, IFC cannot be held liable for deciding not to appoint a director to Banco Montevideo's board; it was under no legal obligation or duty as minority shareholder to participate in the administration of the corporation.  *Id.* ¶ 53.

Moreover, contrary to Plaintiffs' allegation that IFC "neglected to appoint a director as its investment agreement authorized it to do," *Seguros* Complaint ¶ 86; *Stiegwardt* Complaint ¶ 86, the November 27, 2001 Shareholders' Agreement does not impose any obligation on IFC to appoint a director.  Rather, the agreement provides that IFC "shall have the ***right***" to designate a member of the board.  Shareholders Agreement § 2.01 (Exh. 3 to Vasquez Declaration at 2, emphasis added); Ramón ¶ 55.  No provision of Uruguayan law imposes liability for not

exercising a legal right; the very essence of a right, rather than an obligation, is that the holder has the freedom to not exercise it. *Id.* ¶¶ 56-57.[3]

With regard to the second tort element, Uruguayan law provides that, in the case of fraud, fraud or gross negligence is required to establish liability. *Id.* ¶ 58. As noted, there are no allegations in the Complaints—let alone supporting facts—that IFC participated in any fraudulent conduct or was grossly negligent in its conduct as a Banco Montevideo shareholder. *Id.*

Finally, tort liability is imposed only for unlawful acts that are the direct and immediate cause of the damage claimed. *Id.* ¶ 59. The Uruguayan Supreme Court has held that only "adequate" cause—i.e., the probable and, thus, reasonably foreseeable cause—is relevant to a liability determination. *Id.* ¶ 60. Because there is no allegation in the Complaints that IFC played a role in the alleged fraudulent conduct that Plaintiffs contend caused them harm, IFC's conduct in not appointing a director did not directly and immediately cause Plaintiffs' harm. *Id.* ¶ 64.

Like Plaintiffs' allegations that IFC is liable by virtue of being a Banco Montevideo shareholder, their allegations that IFC is liable in tort are legal conclusions couched as fact allegations. *E.g.*, *Seguros* Complaint ¶¶ 76-78, 86-88, 96-102; *Stiegwardt* Complaint ¶¶ 77-79, 86-88, 98-103. As such, they should be rejected and do not constitute a basis on which to state a claim for relief against IFC. *Ramón* ¶ 65.

---

[3] Uruguayan law applies the principle of "relativity of the contract," under which contracts produce effects only between the contracting parties, and not vis-à-vis third parties. *Ramón* ¶ 54. Consequently, assuming arguendo there was a contractual obligation in the Shareholders Agreement to appoint directors, it could only be enforced by the other parties to the contract— Detix S.A. and Compagnie D'Investissements S.A.—and not by third parties like Plaintiffs. *Id.*

### 3. IFC Is Not A Member Of The Velox Economic Group And Cannot Be Held Liable Under Any Of The Theories Applicable To Such Groups

Under Uruguayan law, an "economic group" is a union of independent companies related by a variety of economic links and controlled by a single decision-making power. Ramón ¶ 68. The existence of an economic group implies that a controlling company has the de facto and de jure capacity to determine the will of the controlled companies. *Id.* ¶ 70. The members of an economic group, however, do not forfeit their status as legally independent entities, and maintain separate assets and liabilities. *Id.* ¶ 71.

As discussed, IFC's position as a minority shareholder in Banco Montevideo, the company alleged to be "the flagship entity of the Velox Group," *Seguros* Complaint ¶ 86; *Stiegwardt* Complaint ¶¶ 6, 86, does not make it a member of the Velox Group. Ramón ¶¶ 72-73. Moreover, the Complaints do not allege that IFC—a multilateral credit organization—controlled or was controlled by the companies purportedly constituting Grupo Velox. *See id.* ¶ 73. There are no allegations that IFC made decisions applicable to those companies or was in any way directed by any of them. *Id.*

Even if Banco Montevideo is considered to be a member of an economic group alleged to have engaged in fraudulent schemes, however, none of the liabilities that might be attributed to Banco Montevideo could be extended to IFC as a minority shareholder. *Id.* ¶¶ 72, 74. As discussed in the Ramón Affidavit, there are three liability regimes that theoretically could apply to economic groups under Uruguayan law: (i) liability of controlling companies and their directors, (ii) disregard of the separate legal entity, and (iii) liability of controlling companies for the act of a dependent. *Id.* ¶¶ 74, 76. But none of these regimes provide for the liability of a member company's shareholders such as IFC. *Id.* ¶ 75. Absent actual fraudulent use of the corporate entity, mere shareholders such as IFC are not subject to liability. *Id.* ¶¶ 71, 74, 83-86.

First, although Uruguayan law provides for joint and several liability of a controlling company and its directors for conduct violating legally imposed duties or constituting an "abuse of right" (i.e., fraud), such liability does not apply to shareholders. *Id.* ¶¶ 78-80. Moreover, under article 51 of Law No. 16060, the only parties who have standing to sue for such violations are the controlled company and its shareholders—not other third parties, including creditors of the controlled company. *Id.* ¶ 80. Further, liability under article 51 has a three year statute of limitations which would preclude Plaintiffs from bringing any action predicated upon it to the extent the events complained of occurred prior to August 2002. *Id.*

Second, the corporate veil cannot be pierced and IFC's independent legal status cannot be disregarded due to the mere fact that IFC was a shareholder of a company in an economic group, without proven fraudulent conduct on IFC's part. *Id.* ¶ 84. Under article 189 of Law No. 16060, disregard of an independent legal entity requires some fraudulent use of the corporation to the detriment of shareholders or third parties. *Id.* Moreover, piercing the corporate veil applies only to **direct** participants in fraudulent acts or omissions, taking into account their involvement and knowledge of the events. *Id.* ¶¶ 84-85. Because Plaintiffs' own allegations indicate that IFC did not participate in any of the alleged fraudulent schemes, IFC cannot be held liable under a theory of disregarding its independent legal identity. *Id.* ¶ 86.

Third, indirect and strict "liability for the act of a dependent" under article 1324 of the Uruguayan Civil Code is not applicable for a number of reasons, including that Banco Montevideo was not a "dependant" of IFC and the specific corporate provisions already discussed regulating the liability of controlling companies and directors, the recognized separation of member company liabilities, and the fundamental principle of limited shareholder

liability. *Id.* ¶¶ 87-90. Under Uruguayan law, the general tort provision in article 1324 is inapplicable where a specific legal regime regulates a matter without imposing liability. *Id.* ¶ 89.

Based on the above, Ms. Ramón ultimately concludes that "even if the matters set forth in the Plaintiffs' papers were to be taken as true, their claims against IFC would fail under Uruguayan law." *Id.* ¶ 92. Because Ms. Ramón has reviewed Plaintiffs' papers in the light most favorable to them, her opinion comports with the standards of Rule 12(b)(6). Accordingly, both Complaints should be dismissed for failure to state any claims.

## V. THE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES

Plaintiffs have failed to join numerous parties in this case that were responsible for the unlawful conduct of the Velox Group and for the failure of Banco Montevideo. The absence of these parties, among other things, precludes complete relief from being accorded to Plaintiffs and IFC, and leaves IFC subject to a substantial risk of incurring multiple obligations by reason of the absent parties' interests in this case. Moreover, the Court lacks personal jurisdiction over these absent parties. In the absence of these parties, the case cannot proceed in equity and good conscience. Therefore, the case should be dismissed under Rule 19 of the Federal Rules of Civil Procedure.

Rule 19 provides a two-step inquiry for determining whether an action must be dismissed for failure to join an indispensable party. First, the Court must determine "whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). If the Court determines that the party is necessary, but joinder is not feasible, it must then assess under Rule 19(b) whether "in equity and good conscience" the action can proceed without the necessary party or whether it must be dismissed. *See, e.g.*, *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920

F.2d 1121, 1124 (2d Cir. 1990). If the Court determines that dismissal is warranted, the absent

party is deemed indispensable. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S.

102, 118 (1968).

### A. Numerous Necessary Parties Are Currently Absent From These Actions

Rule 19(a) provides that an absent party should be joined, if feasible, where:

> (1) in the person's absence complete relief cannot be accorded among
> those already parties, or (2) the person claims an interest relating to the
> subject of the action and is so situated that the disposition of the action in
> the person's absence may (i) as a practical matter impair or impede the
> person's ability to protect that interest or (ii) leave any of the persons
> already parties subject to a substantial risk of incurring double, multiple,
> or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Federal "[d]istrict courts have broad discretion in Rule 19 application, due

to the fact-based analysis of the effects of non-joinder." *S & S Mach. Corp. v. Gen. Motors

Corp.*, No. 93 Civ. 3237 (CSH), 1994 WL 529867, at *3 (S.D.N.Y. Sept. 28, 1994).

Here, the Complaints describe numerous parties who were primary participants in the

fraudulent conduct for which Plaintiffs allege IFC is liable. Plaintiffs list several "principal

shareholders and administrators," including members of the Peirano family, who were criminally

indicted and jailed in Uruguay for misappropriating Bank assets. *Seguros* Complaint ¶¶ 6, 30-

33, 84-85; *Stiegwardt* Complaint ¶¶ 7, 31-34, 84-85. Another, Juan Peirano Basso, the President

of Banco de Montevideo, remains an international fugitive with a pending arrest warrant against

him. *Seguros* Complaint ¶¶ 33, 85; *Stiegwardt* Complaint ¶¶ 34, 85. While Plaintiffs allude

briefly to "other actions . . . brought as a result of the collapse of the [Velox] Group and the

looting of the assets," *Stiegwardt* Complaint ¶ 96, none of the individuals directly implicated in

the Banco de Montevideo fraud have been named as parties to this suit.

These parties are necessary because, in their absence, "complete relief cannot be

accorded among those already parties." Fed. R. Civ. P. 19(a)(1). For example, assuming

*arguendo* that this Court held that IFC is not immune from this suit under the IOIA and its Articles of Agreement, Plaintiffs still could not obtain "complete relief" from IFC alone because, as discussed, IFC is not jointly and severally liable for the absent parties' actions. Further, should the Court find IFC liable, IFC itself would have claims against the absent parties. Absent parties are deemed "necessary" within the meaning of Rule 19(a)(1) when, as here, their alleged conduct is central to the plaintiffs' causes of action. *Circle Indus. v. City Fed. Sav. Bank*, 749 F. Supp. 447, 456 (E.D.N.Y. 1990) (holding that, "as the 'lead' bank in the lending consortium . . . and as the 'sole' lending negotiator as to the terms of the financing agreements, [the non-joined party] is a person in whose 'absence complete relief cannot be accorded among those already parties'"); *Spirit v. Teachers Ins. & Annuity Ass'n of Am.*, 416 F. Supp. 1019, 1022 (S.D.N.Y. 1976) ("When an entity is more accurately described as an 'active participant' . . . joinder is indicated.").

In addition, the absent parties "claim[] an interest relating to the subject of the action," and are, as a result, necessary under Rule 19(a)(2). Some have already been subject to criminal and/or civil liability abroad for dealings that are now the subject of these actions. *Seguros* Complaint ¶¶ 30-33, 84-85; *Stiegwardt* Complaint ¶¶ 31-34, 84-85, 96. Their absence here "as a practical matter impair[s] or impede[s]" their ability to defend themselves against findings of wrongdoing by this Court, which is likely to consider their conduct when assessing IFC's potential liability. Fed. R. Civ. P. 19(a)(2)(i); *see also Ente Nazionale Idrocarburi v. Prudential Sec. Group*, 744 F. Supp. 450, 457 (S.D.N.Y. 1990) (noting that "we are not unmindful of the possible transnational consequences of a ruling by a United States court in this matter" when granting motion to dismiss for failure to join an indispensable party subject to pending proceedings abroad).

Significantly, the other parties' absence here subjects IFC to the risk of incurring "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(2)(ii). Should this Court find IFC liable to any degree, those held liable for the Banco Montevideo fraud in other jurisdictions—whether in an action brought by Plaintiffs or other parties—may bring their own claims for contribution against IFC. If such parties are not joined here, IFC faces the prospect of future judgments—potentially in foreign courts—which might exceed or be otherwise inconsistent with the liability imposed by this Court.

### B. This Court Lacks The Personal Jurisdiction Needed To Join The Absent Parties To These Actions

While the absent parties are necessary under both 19(a)(1) and 19(a)(2), their joinder is nonetheless infeasible because parties cannot be joined when a court lacks personal jurisdiction over them. *See Jota v. Texaco Inc.*, 157 F.3d 153, 161 (2d Cir. 1998) ("Rule 19(a), captioned 'Persons to be Joined if Feasible,' requires the District Court to join a person who is subject to service of process **and** the jurisdiction of the Court.") (emphasis added); *Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667, 669 (2d Cir. 1982) ("*Rapoport I*") (holding that "none of these [non-joined] claimants is subject to *in personam* jurisdiction" when determining that Rule 19(b) analysis was necessary); *Cinemotion NV v. Lorimar-Telepictures Corp.*, No. 86 CIV. 8673 (RPP), 1989 WL 120083, at *2 (S.D.N.Y. Oct. 5, 1989) ("Under Rule 19, dismissal is only possible when joinder either would deprive the court of subject matter jurisdiction or is not feasible under the applicable law of in personam jurisdiction."). From the information provided in the Complaints, it appears that a number of the absent parties—if not all of them—are not subject to the personal jurisdiction of this Court.

Many of the companies of the Velox Group were domiciled in Argentina, Uruguay, and Paraguay. *Seguros* Complaint ¶ 9; *Stiegwardt* Complaint ¶ 10. Both the Velox Group and

Banco de Montevideo had their center of operations in Uruguay. *Seguros* Complaint ¶ 65; *Stiegwardt* Complaint ¶ 66. The Peirano family purchased and operated Banco de Montevideo in Uruguay, and were subject to criminal indictments in Uruguay—all of which suggest that they had been domiciled there. *Seguros* Complaint ¶¶ 6-7, 65; *Stiegwardt* Complaint ¶¶ 7-8, 66. The actions giving rise to the Complaints arose principally in Uruguay, while still other acts took place in Argentina, Paraguay and Brazil. *Seguros* Complaint ¶ 65; *Stiegwardt* Complaint ¶ 66.

In short, none of the absent parties appear to have resided or been headquartered in New York, nor to have done anything there with respect to the subject matter of this dispute. *See Rapoport v. Banco Mexicano Somex, S.A.*, 706 F. Supp. 207, 211 (S.D.N.Y. 1988) ("*Rapoport II*") ("[T]his Court lacks in personam jurisdiction over [the non-joined party], since it undertakes no commercial acts in the United States and did nothing in the United States with respect to the subject matter of the present dispute. . . ."). There is nothing to suggest, in fact, that the absent parties have any connection whatsoever to New York or to the United States. Consequently, this Court lacks personal jurisdiction over these parties, and cannot join them to the present actions.

### C. The Absent Parties Are Indispensable To The Present Actions

When, as is the case here, the joinder of necessary parties under Rule 19(a) is impossible, the Court must finally determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person[s] being thus regarded as indispensable." Fed. R. Civ. P. 19(b).

In *Provident Tradesmens Bank*, the Supreme Court ruled that "Rule 19(b) suggests four 'interests' that must be examined in each case to determine" whether to dismiss an action:

> First, the plaintiff has an interest in having a forum. . . . Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. . . . Third, there is the interest of the outsider whom it would have been desirable to join. . . . Fourth, there remains the

> interest of the courts and the public in complete, consistent, and
> efficient settlement of controversies.

*Provident Tradesmens Bank*, 390 U.S. at 109-111.  Here, the four 19(b) factors indicate that

these actions cannot proceed without the absent parties and must be dismissed.

First, Plaintiffs' interest in having a forum is protected even in the case of dismissal.  The

Supreme Court has noted that "the strength of this interest obviously depends upon whether a

satisfactory alternative forum exists."  *Provident Tradesmens Bank*, 390 U.S. at 109.  Here, a

satisfactory—indeed, superior—alternative forum exists in Uruguay.  The only readily apparent

connection to New York for these actions is Plaintiffs' mistaken belief that IFC is a New York

corporation, conducting substantial business and maintaining a principal place of business there.

*Seguros* Complaint ¶¶ 1-2; *Stiegwardt* Complaint ¶¶ 1-2.  As already discussed, the parties and

conduct at issue were principally, if not entirely, located in Uruguay.  Criminal investigations

into the Banco Montevideo fraud were conducted in Uruguay.  Criminal and civil actions have

already been tried there.  Because a more appropriate forum exists for Plaintiffs in Uruguay, they

would not be prejudiced by dismissal from this Court.  *See Rapoport II*, 706 F. Supp. at 211

(acknowledging an earlier ruling that "all the players in this drama are in Mexico, all the

witnesses are there, and all the documentary evidence and court transcripts are there" when

granting a motion to dismiss for failure to join indispensable parties).

The second 19(b) factor also weighs in favor of dismissal.  IFC clearly "wish[es] to avoid

multiple litigation, or inconsistent relief, ***or sole responsibility for a liability***" that it may share

with the absent parties.  *Provident Tradesmens Bank*, 390 U.S. at 110 (emphasis added).  IFC's

interest in avoiding sole responsibility for the criminal acts of absent parties is self-evident.  In

addition, as discussed in the 19(a)(2) analysis, the absence of such parties subjects IFC to the risk

of incurring multiple or inconsistent obligations.  In the alternative, should the Court find it

potentially liable, IFC would assert claims against the absent parties, including, *inter alia*, to recover contribution from those parties. *See Circle Indus.*, 749 F. Supp. at 457 (recognizing that "[t]he remaining defendants would be unable to assert claims for contribution and indemnity without [the non-joined party] present").

The interests of the absent outsiders further point toward dismissal of Plaintiffs' actions. IFC is unlikely to protect the absent parties' interests to the extent that they are inconsistent with its own. And, while a judgment in their absence will not have binding legal effect on them, "it is in [the absent parties'] interest to be present when [Plaintiffs'] claims against the remaining defendant[]—claims principally based on [the absent parties' conduct]—are adjudicated." *Circle. Indus.*, 749 F. Supp. at 457; *see also Provident Tradesmens Bank*, 390 U.S. at 110 (noting the effects that a judgment can have on nonparties, even without *res judicata*).

Finally, the fourth 19(b) factor strongly supports a finding that the actions must be dismissed. As with Plaintiffs' interest in having an appropriate forum, considerations of consistency and efficiency indicate that these actions should be dismissed and brought instead in a foreign court, likely in Uruguay. Because the non-joined parties' conduct is central to Plaintiffs' claims, a trial in their absence—in a jurisdiction with little or no connection to the parties, events, and evidence at issue—would unnecessarily burden this Court and prolong the litigation. *See Circle Indus.*, 749 F. Supp. at 457 ("Even without [the absent party] as a party to this action, the plaintiff's discovery efforts and evidentiary proof will be directed at [that party]. A complete, consistent and efficient adjudication of plaintiff's claims against the remaining defendants could only be achieved in an action where [it] is also a party."); *Ente Nazionale*, 744 F. Supp. at 461 (holding that adjudication among the present parties only "would necessarily entail a presentation of Italian law, as well as Italian witnesses and documentary evidence, and

translations into English thereof . . . all of which would no doubt have the effect of protracting the proceeding needlessly").

In the absence of numerous parties implicated in Plaintiffs' Complaints as principal participants in the Banco de Montevideo fraud, this Court cannot "in equity and good conscience" allow the actions to proceed.

## CONCLUSION

For all the foregoing reasons and those in the memorandum of law accompanying IFC's Motion to Dismiss the related *Stiegwardt* Complaint, this Court should grant IFC's Motion and Dismiss the Complaint.

Dated: May 1, 2006          Respectfully submitted,

**WHITE & CASE** LLP

/S/ Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr. (FV-1446)
Frank Panopoulos (FP-6975)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile:  (202) 639-9355

*Attorneys for Defendant International Finance Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant IFC's Memorandum of Law in Support of Its Motion to Dismiss The Complaint was served this 1st day of May, 2006 by Federal Express to Plaintiffs' counsel, Jorge W. Moreira, Esq., Moreira and Associates PLLC, 130 W. 42nd Street, Suite 714, New York, NY 10036.

/S/ Jonathan C. Ulrich
Jonathan C. Ulrich