UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
BANCO DE SEGUROS DEL ESTADO,          :
                                      :
                    Plaintiff,        :   06 Civ. 2427 (LAP)
                                      :
          -against-                   :   MEMORANDUM AND ORDER
                                      :
INTERNATIONAL FINANCE                 :
CORPORATION,                          :
                                      :
                    Defendant.        :
------------------------------------x
          and
------------------------------------x
FELIX ARTURO STIEGWARDT, et al.,      :
                                      :
                    Plaintiffs,       :   06 Civ. 3739 (LAP)
                                      :
          -against-                   :   MEMORANDUM AND ORDER
                                      :
INTERNATIONAL FINANCE                 :
CORPORATION,                          :
                                      :
                    Defendant.        :
------------------------------------x


LORETTA A. PRESKA, United States District Judge:

    The motions under consideration are from the two

above-captioned related cases (the "Banco de Seguros

Action" and the "Stiegwardt Action") involving the same

Defendant International Finance Corporation ("IFC").[1]  Both

--------------------

[1] Epson Bruce et al. v. International Finance Corp., No. 06
Civ. 8191 (S.D.N.Y.) (the "Bruce Action") is a related case
assigned to this Court, but the parties have stipulated to
stay that proceeding pending the outcome of the related
actions addressed in this Memorandum and Order.  By Order
(continued on next page)

cases arise from the same set of facts and concern the failure of Banco de Montevideo SA ("Banco Montevideo"), a Uruguayan bank.  As the motions are essentially identical, both parties incorporate arguments from one case into the other in their submissions, and Plaintiffs are represented by the same counsel, both motions will be resolved in this Memorandum and Order.

PROCEDURAL BACKGROUND

Plaintiff Banco de Seguros del Estado ("Banco de Seguros") is an entity that owns or owned bonds or other commercial paper or has or had a deposit account with Banco Montevideo or with any of the financial or banking entities related to Banco Montevideo. (Banco de Seguros Complaint, ("BS Compl."), filed January 9, 2006, attached as Ex. 1 to Notice of Removal [Dkt. No. 1, 06 Civ. 2427], ¶ 4.)  The other Plaintiffs are individuals who own or owned bonds or other commercial paper or have or had a deposit account with Banco Montevideo or with any of the financial or banking entities related to Banco Montevideo. (Stiegwardt Complaint, ("Stiegwardt Compl."), filed December 27, 2005,

───────────────────────────────

(continued from prior page)
dated October 23, 2006, the late District Judge Richard
Conway Casey granted the parties' application for a stay in
the Bruce Action. (See Dkt. No. 4, 06 Civ. 8191.)

attached as Ex. 1 to Notice of Removal [Dkt. No. 1, 06 Civ. 3739], ¶ 4.)  Defendant IFC is an international organization, allegedly liable by virtue of its ownership through shares of Banco Montevideo and by its entitlement to participation through appointment of a Director on the Board of Directors of Banco Montevideo. (BS Compl. ¶ 5.)[2]

Plaintiffs filed the Stiegwardt Complaint in the New York State Supreme Court, New York County, on August 29, 2005, and the Banco de Seguros Complaint in the same court on or about January 9, 2006.  IFC removed the Banco de Seguros Action on March 28, 2006, and the Stiegwardt Action on May 16, 2006, to this Court pursuant to 28 U.S.C. § 1441(b) and 22 U.S.C. § 282f. (See Dkt. No. 1, 06 Civ. 2427; Dkt. No. 1, 06 Civ. 3739, respectively.)[3]

---

[2] As the two complaints, the Banco de Seguros Complaint and the Steigwardt Complaint, are essentially identical in their allegations and differ only in the description of the Plaintiffs, the Court will refer to only one Complaint, the Banco de Seguros Complaint, for the factual background.

[3] IFC also removed the Bruce Action to this Court on October 6, 2006. (See Dkt. No. 1, 06 Civ. 8191.)  A case captioned Stiegwardt, et al. v. International Finance Corp., No. 06 Civ. 2426 (S.D.N.Y.) was also removed by IFC on March 28, 2006.  By Order entered on May 22, 2006, the parties consented to the discontinuance of that action. (See Dkt. No. 4, 06 Civ. 2426.)

FACTUAL BACKGROUND

Banco Montevideo

Banco Montevideo, previously owned by Deutsche Bank
A.G., was sold in or about 1992 to the Periano Family with
the Periano Family's assumption of operational control in
February 1993, controlling 99% of the voting shares. (BS
Compl. ¶¶ 6-7.)  Since the beginning of 2001, the
government of Uruguay had detected a pattern of insider
dealings where Banco Montevideo allegedly had extended
large and unsecured loans to individuals and companies
related to its management and shareholders. (BS Compl.
¶ 14.)  The group of companies and individuals with shared
interests and ownership of Banco Montevideo later came to
be known as "Grupo Velox," or the "Velox Group," of which
Banco Montevideo allegedly was the center. (BS Compl. ¶¶ 8,
16.)  On February 25, 2002, the Uruguayan Government's
Banking Agency, the Central Bank of Uruguay instructed its
supervisory panel to keep a close watch on activities of
Banco Montevideo and to report back to the Agency
periodically. (BS Compl. ¶ 17.)  Upon that supervision, the
panel discovered that Banco Montevideo had given improper
loans to insiders, and, by resolution dated April 25, 2002,
the Central Bank of Uruguay gave Banco Montevideo ninety

days to revoke and collect on those loans, and to increase
its capital by $45,000,000. (BS Compl. ¶ 18.)  On
June 7, 2002, the Superintendent of Institutions of
Financial Intermediation, the supervisory branch of the
Central Bank of Uruguay, informed the government agency
that the irregularities at Banco Montevideo had not been
corrected and in fact had grown worse. (BS Compl. ¶ 21.)
Many of the improper transactions allegedly were carried
out through the transfer and shuffling of funds using
accounts held by Banco Montevideo in the United States,
including Deutsche Bank New York and Brown Brothers
Harriman. (BS Compl. ¶ 25.)  On December 31, 2002, the
Central Bank ordered the liquidation of Banco Montevideo,
with its sibling, Banco La Caja Obrera. (BS Compl. ¶ 28.)
The Peirano family, the principal owners of the Velox Group
and the individuals allegedly running the scheme within the
Velox Group, were all criminally indicted in Uruguay and
Paraguay as a consequence.[1] (BS Compl. ¶ 30.)

---

[1] Jorge Peirano Faccio, the family patriarch, passed away
while incarcerated. (BS Compl. ¶ 31.)  Three of Peirano
Faccio's sons (Jorge, Jose, and Dante Peirano Basso), also
principals of the Velox Group and shareholders and
directors of the Velox Group's companies, are still in
jail. (BS Compl. ¶ 32.)  Juan Peirano Basso, at the time of
the filing of the Banco de Seguros Complaint, was an
international fugitive with a pending arrest warrant
against him. (BS Compl. ¶ 33.)

The Uruguayan Congressional investigation found that directors and shareholders willfully and intentionally carried out transactions and operations which were undetected by the internal and external controls and which breached all existing rules and requirements as to banking procedures and the trust of the bank's customers. (BS Compl. ¶¶ 34-42.)  In addition, there is evidence of an economic group comprised of different participating and connected companies as revealed from criminal court actions, which demonstrated common ownership among the various entities. (BS Compl. ¶¶ 51-64.)

Background on IFC

IFC is a public international organization established by international agreement in the forms of Articles of Agreement among its member countries, including the United States of America and the Republic of Uruguay, and is the private sector arm of the World Bank Group. (See Basic Facts About IFC, http://www.ifc.org/about, ¶ 2, attached as Ex. 1 to Declaration of Francis A. Vasquez, Jr., dated May 1, 2006 ("Vasquez Decl."); IFC 2005 Annual Report, Vol. I at inside cover page, attached as Ex. 2 to Vasquez Decl.)[5]

---

[5] For the reasons discussed infra, the Court may consider these materials in connection with the resolution of these motions to dismiss for lack of subject matter jurisdiction.

IFC provides loans, equity investments, advice, and technical assistance to promote sustainable projects in developing member countries. (Vasquez Decl., Ex. 1 at ¶¶ 1-3; Vasquez Decl., Ex. 2 Vol. I at 2, Vol. II at 2.)  The United States was a founding member of IFC, and Congress authorized the President to accept membership for the United States in IFC. See 22 U.S.C. § 282.  Pursuant to the International Organizations Immunities Act of 1945 ("IOIA"), 22 U.S.C. § 288, the President, by Executive Order, "designate[d] [IFC] as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the said International Organizations Immunities Act." Executive Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956).  IFC's headquarters is in Washington, D.C., and that is its sole office in the United States. (Vasquez Decl., Ex. 2, Vol. II at 146; Articles of Agreement, Art. IV § 8, attached as Ex. C to IFC's Memorandum of Law in Support of Motion to Dismiss the Complaint ("IFC Memo").)[6]

---

[6] The relevant portion of the Articles of Agreement states: "The principal office of the Corporation shall be in the same locality as the principal office of the [World] Bank."

Allegations against IFC

The Complaints allege that Defendant IFC is a company domiciled and doing business in New York, who at relevant times, was also a shareholder of Banco Montevideo and a member of the Velox Group. (BS Compl. ¶¶ 1, 5.) Plaintiffs' claims against IFC arise from the fact that IFC owned 9.16% of the capital shares of Banco Montevideo. (BS Compl. ¶ 98.) The Complaints allege that the criminal activities engaged in at Banco Montevideo and the ultimate collapse of Banco Montevideo occurred under IFC's "watch," when IFC had failed to supervise the functioning of the bank and neglected to appoint a Director as its investment agreement authorized it to do. (BS Compl. ¶¶ 82, 83, 86, 100, 102.) Plaintiffs claim that under the governing laws, the owners of Banco Montevideo who did appoint board members to represent their interest, along with the owners who had the power and opportunity to appoint board members, are liable for the violations of the Board of Directors of Banco Montevideo in the Board's failure to implement, monitor, and enforce the proper policies and procedures to safeguard Banco Montevideo's assets. (BS Compl. ¶ 97.)

DISCUSSION

Legal Standard for Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002).  Jurisdictional allegations must be shown affirmatively and may not be inferred favorably to the party asserting them. See In re Nat. Australia Bank Secs. Litig., No. 03 Civ. 6537, 2006 WL 3844465, at *2 (S.D.N.Y. Oct. 25, 2006) (citing Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

On a motion to dismiss which challenges the Court's subject matter jurisdiction, the Court may consider evidence outside the pleadings, such as affidavits. See State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (citing Antares Aircraft, L.P. v. Fed. Rep. of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991)); see also Bldg. and Constr. Trades Counsel v.

9

Downtown Dev., Inc., 448 F.3d 138, 150 (2d Cir. 2006)
(citing Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir.
2002)).  The allegations of the Complaint are not accorded
any special treatment in such determinations. See, e.g.,
APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003).  The
Court may also consider materials of which the plaintiff
had notice and relied upon in framing his complaint, as
well as materials of which judicial notice may be taken.
See Fed. R. Evid. 201; Kavowras v. N.Y. Times Co., 328 F.3d
50, 57 (2d Cir. 2003); Cortec Indus., Inc. v. Sum Holding
L.P., 949 F.2d 42, 48 (2d Cir. 1991).


Jurisdiction Over IFC

     The IOIA provides that "[i]nternational organizations,
their property and their assets, wherever located, and by
whomsoever held, shall enjoy the same immunity from suit
and every form of judicial process as is enjoyed by foreign
governments, except to the extent that such organizations
may expressly waive their immunity for the purpose of any
proceedings or by the terms of any contract." 22 U.S.C.
§ 288a(b)(2005).  As noted in the factual background above,
IFC qualifies as an "international organization" under the
IOIA, because it was designated by Executive Order 10680 as
a public international organization entitled to enjoy the

10

privileges, exemptions, and immunities conferred by the
IOIA.  The IOIA and IFC's enabling legislation provide a
comprehensive statutory scheme governing jurisdiction,
personal jurisdiction, venue, removal, and property
attachment in suits against IFC. See, e.g., 22 U.S.C.
§§ 288a(b) (providing that international organizations,
their property and assets enjoy the same immunity from suit
and every form of judicial process enjoyed by foreign
governments); 288a(c) (providing that property and assets
of international organizations are immune from search and
confiscation, and archives of international organizations
are inviolable); 282f (granting original jurisdiction over
any action to which IFC is a party to the U.S. district
court in which IFC's principal office in the United States
is located, providing that IFC is deemed to be an
inhabitant of that district, providing venue for such
actions in that district, and authorizing removal of any
such action from State Court to the federal district
court).  By enacting the IOIA and incorporating IFC's
Articles of Agreement into the United States Code, Congress
expressly conferred a grant of immunity on IFC that
eliminates this Court's competence to hear Plaintiffs'
claims and which, as discussed below, has not been waived
for these types of claims.

In Atkinson v. Inter-American Development Bank, 156
F.3d 1335, 1341 (D.C. Cir. 1998), the D.C. Circuit held
that an international organization's immunity under the
IOIA is absolute and is co-extensive with the absolute
immunity accorded to foreign sovereigns in 1945. See also
Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480,
486 (1983) (noting that "the United States generally
granted foreign sovereigns complete immunity from suit in
courts of this country" until 1952, when the restrictive
theory of sovereign immunity was adopted by the U.S. State
Department); DeLetelier v. Republic of Chile, 748 F.2d 790,
796 (2d Cir. 1984) (same).

As an international organization, the absolute
immunity IFC possesses is subject to only two limitations:
(1) express waiver by the international organization
contained in the Articles of Agreement or contract and
(2) a modification of the Executive Order of the President.
Mendaro v. World Bank, 717 F.2d 610, 613 (D.C. Cir. 1983).
There has been no modification of the Executive Order of
the President pertaining to IFC.  If there is no waiver of
immunity under the Articles of Agreement, then the Court
may not accept jurisdiction over the claim. Id. at 614; see
also Weinstock v. Asian Dev. Bank, No. 105 Civ. 174, 2005

WL 1902858, at *3 (D.D.C. July 13, 2005) (subject matter
jurisdiction is "proper only if immunity has been waived").

Article VI, section 3 of IFC's Articles of Agreement
contains a limited wavier of immunity from suit.  Section 3
states in relevant part that "[a]ctions may be brought
against the Corporation only in a court of competent
jurisdiction in the territories of a member in which the
Corporation has an office, has appointed an agent for the
purpose of accepting service or notice of process or has
issued or guarantee securities." (Articles of Agreement,
Art. VI § 3, Ex. C of IFC Memo at 9.)  Pursuant to 22
U.S.C. § 282g, the provisions of Article VI, sections 2
through 9, "shall have full force and effect in the United
States and its Territories and possessions upon acceptance
of membership by the United States in, and the
establishment of, the Corporation."

In Mendaro, the plaintiff sued the World Bank claiming
employment discrimination and retaliation.  The plaintiff
argued that the World Bank had waived its immunity from
suit under its Articles of Agreement.  The D.C. Circuit
affirmed the district court's dismissal of the case based
on the World Bank's immunity.  In doing so, the Mendaro
court explained the scope of the World Bank's Articles of
Agreement, which are identical to those of IFC, stating

that it was "unable to read the [waiver provision] . . . as evincing an intent by the members of the Bank to establish a blanket waiver of immunity from every type of suit not expressly prohibited by reservations [in that article]." 717 F.2d at 615.[7]  The D.C. Circuit interpreted the waiver provision narrowly, holding that the waiver applied only to "suits by [IFC's] debtors, creditors, bondholders, and those other potential plaintiffs to whom [IFC] would have to subject itself to suit in order to achieve its chartered objectives." Id.; see also Atkinson, 156 F.3d at 1338 (holding that "immunity should be construed as not waived unless the particular type of suit would further the [organization's] objectives" and affirming dismissal of suit against Inter-American Development Bank to garnish wages of bank's employee).  As noted by the D.C. Circuit in

_____

[7] The status of the immunities of IFC and of the other World Bank entities is virtually indistinguishable.  All were granted immunity by similar Executive Order. See Luctcher S.A. Celulose e Papel v. Inter-Am. Dev. Bank, 382 F.2d 454, 457-58 (D.C. Cir. 1967).  Moreover, even the relevant portions of their Articles of Agreement are the same and provide: "Actions may be brought against the [entity] only in a court of competent jurisdiction in the territories of a member in which the [corporation] has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities." Compare Mendaro, 717 F.2d at 614 (quoting World Bank's Articles of Agreement, Article VII, Section 3) and Atkinson, 156 F.3d at 1337 (quoting Inter-American Development Bank's Articles of Agreement, Article XI, section 3), with IFC's Articles of Agreement, Art. VI § 3, Ex. C of IFC Memo at 9.

Mendaro, "the facially broad waiver of immunity contained

in the Bank's Articles of Agreement must be narrowly read

in light of both national and international law governing

the immunity of international organizations." 717 F.2d at

611.

## The Waiver of Immunity Provision Does Not Apply to Plaintiffs' Claims

Plaintiffs argue that IFC waived its immunity by

operation of its Articles of Agreement because the Articles

have been held to waive immunity for suits brought by

"bondholders, creditors, and beneficiaries of its

guarantees" according to Lutcher S.A. Celulose E Papel v.

Inter-American Dev. Bank, 382 F.3d 454, 456 (D.C. Cir.

1967). However, neither of the Complaints alleges that

Plaintiffs are debtors, creditors, or bondholders of IFC;

instead the Complaints allege that Plaintiffs are

bondholders or depositors of Banco Montevideo or other

financial entities of which IFC is not a part. (BS Compl.,

¶ 4; Stiegwardt Compl. ¶ 4.) Indeed, the Plaintiffs are

neither bondholders nor creditors of IFC nor beneficiaries

of any IFC guarantees. None of the cases regarding the

IOIA, including Lutcher, have interpreted the waiver of

immunity for creditors, bondholders, and guarantee

15

beneficiaries to extend to those related as tenuously
through the theories of vicarious liability argued by
Plaintiffs in their Complaints. See Mendaro, 717 F.2d at
617 (stating that "[s]ince the purpose of the immunities
accorded international organizations is to enable the
organizations to fulfill their functions . . . it is likely
that most organizations would be unwilling to relinquish
their immunity without receiving a corresponding benefit
which would further the organization's goals").

     Nor are the Plaintiffs the type of other "potential
plaintiffs to whom IFC would have to subject itself to suit
in order to achieve its chartered objectives." See Mendaro,
717 F.3d at 615.  As set forth in the Articles of
Agreement, IFC's chartered objective is to "further
economic development by encouraging the growth of
productive private enterprise in member countries,
particularly in the less developed areas . . . ." (Articles
of Agreement, Art. I, Ex. C of IFC Memo at 1.)  Other
chartered objectives include working to "assist in
financing," "bring together investment opportunities," and
"help create conditions conducive to[] the flow of private
capital . . . ." Id.  IFC has no direct relationship with
Plaintiffs; Plaintiffs are depositors and noteholders of a
bank in which IFC held a minority share or of other

financial entities in which IFC has no interest at all.
Plaintiffs and IFC have no contracts or agreements between
them, Plaintiffs owe no debts to IFC, and IFC owes no debts
to them.[8]

In <u>Atlantic Tele-Network Inc. v. Inter-American Dev.
Bank</u>, 251 F. Supp. 2d 126, 132 (D.D.C. 2003), the district
court addressed whether international organizations waive
their IOIA immunity in suits brought by third parties on
the basis of a limited waiver identical to the one in

---

[8] Plaintiffs' suit might actually interfere with IFC's
functions.  Plaintiffs allege that IFC failed to protect
Banco Montevideo by not involving itself with the corporate
governance of a company in which it invested because, the
Complaints allege, IFC did not appoint a Director "as it
was entitled to" and thus failed to prevent the majority
owners from committing fraud and ruining Banco Montevideo.
(<u>See</u> BS Compl. ¶¶ 75-78, 86-88, 100-102.)  However, Article
III, Section 3(iv) of IFC's Articles of Agreement
specifically precludes IFC from involving itself in
corporate governance matters, providing that "the
Corporation shall not assume responsibility for managing
any enterprise in which it has invested and shall not
exercise voting rights for such purpose or for any other
purpose which, in its opinion, properly is within the scope
of managerial record." (Articles of Agreement, Art. III
§ 3(iv), Ex. C of IFC Memo at 3.)  Thus, this is not a case
like <u>Osseiran v. Int'l Fin. Corp.</u>, ___ F. Supp. 2d ___,
No. 06 Civ. 336, 2007 WL 2153272, at *2-*4 (D.D.C.
July 27, 2007), for example, where the district court held
that a wavier of the IFC's immunity was appropriate in the
context of a lawsuit arising from IFC's alleged reneging on
the sale of its equity investment in an entity to a private
investor.  There, the district court concluded that "[i]f
the IFC were free from being sued for violating both fair
dealing and compliance expectations our contract law
protects, IFC might scarcely find any investors willing to
advance its development efforts." <u>Id.</u> at *4.

Article VI, section 3 of IFC's Articles of Agreement.   In
that case, Atlantic Tele-Network ("ATN") had entered into a
contract with the government of Guyana that provided ATN
with the exclusive right to build and service a Guyanan
domestic telecommunication system. Id. at 128.   After
constructing the system and operating it for a few years,
ATN discovered that Guyana would be receiving a loan from
the Inter-American Development Bank ("IDB") of
approximately twenty million dollars to finance
construction of a competing telecommunications system in
violation of ATN's exclusive license. Id.   ATN sued IDB,
among others, to enjoin the loan and claimed that IDB
waived its immunity on the basis of the limited waiver of
immunity in IDB's Charter. Id. at 132.

The district court noted that in Atkinson, the D.C.
Circuit had "most recently adopted an interpretation of the
Section 3 waiver effectively narrowing its scope to a
minimum." Atlantic Tele-Network, 251 F. Supp. 2d at 132.
The district court went on to hold that IDB had not waived
its immunity from suits such as ATN's, because "were this
suit to be allowed, virtually any U.S. citizen with a
commercial grievance against a debtor nation could
challenge an IDB loan to that nation without any
corresponding benefit accruing thereby to the IDB

whatsoever." Id. at 132.  Similarly, in this case
Plaintiffs are not the types of persons, and their claims
are not the types of claims for which IFC has waived
immunity in Article VI, section 3 of its Articles of
Agreement.

Plaintiffs argue in opposition that IFC has waived
immunity by operation of section 5.06 of the Put Option and
Tag-Along Agreement among three individuals, Detix S.A.,
Compagnie D'Investissements S.A., and IFC, which states
that the parties agree that a suit against IFC may be
brought "in any court of the United States of America."
(See Banco de Seguros' Memorandum of Law in Opposition to
IFC's Motion to Dismiss ("BS Opp. Memo"); Put Option and
Tag Along Agreement, attached as Ex. 1 to BS Opp. Memo.)[9]
However, none of the Plaintiffs was a party to that
agreement, and thus Plaintiffs may not enforce any
provisions of that agreement against IFC. See Corcovado
Music Corp. v. Hollis Music, Inc., 981 F.2d 679, 682-83 (2d
Cir. 1993) (party's waiver in contract with counterparty
did not constitute a waiver extending to dealings with
third parties); Dale v. Banque SCS Alliance S.A., No. 02

---

[9] Plaintiffs' opposition memoranda to IFC's motions to
dismiss are similar in argument and thus the Court will
refer only to Banco de Seguros' opposition memorandum for
purposes of both motions.

Civ. 3592, 2004 WL 2389894, at *5 (S.D.N.Y. Oct. 22, 2004)
(waiver in correspondent bank account agreement cannot be
construed as blanket waiver by Banque SCS in "any action
brought against it by a person who is not a party to the
correspondent bank account agreement").  Also, under
section 5.06(c), the parties acknowledge that IFC is
entitled to immunity under the IOIA, including immunity
from trial by jury; the language does not demonstrate an
express waiver of immunity for suits by unrelated third
parties, such as Plaintiffs here. See also Mendaro, 717
F.2d at 613 (holding that IOIA immunity may be limited when
the "organization itself . . . expressly waive[s] its
immunity").

　　　IFC is an international organization that enjoys broad
immunity under IOIA and pursuant to an Executive Order of
the President.  The two possibilities for waiver of
immunity under the IOIA, as noted above, do not apply to
IFC.  It is clear that the waiver of immunity provision in
the Articles of Agreement of IFC was not meant to be
interpreted so broadly as to permit claims by such
tenuously related parties as these Plaintiffs.

## CONCLUSION

Accordingly, because Plaintiffs are not the types of persons, and their claims are not the types of claims for which IFC has waived immunity in Article VI, section 3 of its Articles of Agreement, IFC remains immune from suit in this matter, and IFC's motions to dismiss the Complaints [dkt. no. 7 in 06 Civ. 2427 and dkt. no. 6 in 06 Civ. 3739] under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction are granted.   The Court does not reach IFC's other grounds for dismissal.

Judgment shall be entered accordingly.   The Clerk of the Court shall mark these actions closed and deny all pending motions as moot.


SO ORDERED: New York, New York
            September 19, 2007

_____
LORETTA A. PRESKA U.S.D.J.